**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE**

| | |
|---|---|
| HENRY RIANHARD, individually on behalf of himself and all other similarly situated stockholders of Organovo Holdings, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> TAYLOR CROUCH, KIRK MALLOY, MARK KESSEL, RICHARD MAROUN, DAVID SHAPIRO, CAROLYN BEAVER, and ORGANOVO HOLDINGS, INC., <br><br> Defendant | Case No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Henry Rianhard ("Plaintiff"), by and through his undersigned attorneys, alleges the following on information and belief, except as to those allegations pertaining to his own knowledge and conduct, which are made upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation, review and analysis of: (i) filings made by Organovo Holdings, Inc. ("Organovo" or the "Company") with the United States Securities and Exchange Commission (the "SEC"); (ii) press releases and media reports issued and disseminated by Organovo; and (iii) other publicly available information concerning Organovo.

**INTRODUCTION**

1. Plaintiff asserts this action to remedy the false and misleading disclosures made by Organovo and its Board of Directors (the "Board") in the Company's proxy statement related to its 2019 annual meeting of stockholders (the "Annual Meeting").

2. On July 26, 2019, the Company filed a Schedule 14A Proxy Statement (the "Proxy") with the SEC for the Annual Meeting. In the Proxy, the Board sought stockholder authorization for the Board to adopt an amendment (the "Amendment") to the Company's Certificate of Incorporation (the "Certificate") to effect a reverse stock split of the Company's common stock, at a ratio in the range of 1-for-5 to 1-for-20, with the exact ratio being determined by the Board at a later date (the "Reverse Split Proposal").

3. In the Proxy, the Company and Board affirmatively represented that brokers, banks or other nominees (collectively, "Brokers") could not vote shares that they held on behalf of stockholders in connection with the Reverse Split Proposal unless that party gave specific instructions to a Broker concerning how to vote. The Company and Board further stated that any shares held by Brokers on behalf of stockholders and for which such stockholders did not give voting instructions would be counted as a "broker non-vote" and treated as "Against" votes with respect to the Reverse Split Proposal.

4. Notwithstanding these disclosures, however, the Company and Board allowed Brokers to vote shares with respect to the Reverse Split Proposal that they held on behalf of stockholders and for which the Brokers were not given voting instructions. In fact, the Company and Board counted such votes as "Yes" votes with respect to the Reverse Split Proposal.

5. As such, the Proxy was materially false and misleading. The misrepresentations in the Proxy prevented Organovo stockholders from making an informed decision about whether to approve the Reverse Split Proposal. On the basis of these false and misleading disclosures, Organovo stockholders "voted" to approve the proposal with 84.4 million affirmative votes (with the majority being broker non-votes) and 12 million "Against" votes.

6. Had the vote concerning the Reverse Split Proposal been tabulated as represented in the Proxy, the Reverse Split Proposal would not have been approved. If the broker non-votes were properly counted as "Against" votes, then the Reverse Split Proposal would have only received approximately 28.7 million affirmative votes versus approximately 67.9 million "Against" votes.

7. As a result of the above misconduct, the Company's stockholders have been harmed.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

9. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

10. Venue is proper because a substantial part of the events or omissions giving rise to the claim occurred in this District and Organovo is incorporated in this District.

## THE PARTIES

11. Plaintiff Henry Rianhard is and has continuously been a stockholder of Organovo at all relevant times.

12. Organovo is a Delaware corporation with its principal executive offices at 6275 Nancy Ridge Dr., San Diego, CA 921121.

13. Defendant Taylor Crouch has served as a director since April 2017 and is presently the Chief Executive Officer and President of the Company.

14. Defendant Kirk Malloy has served as a director since December 2014 and is presently Chairman of the Board.

15. Defendant Mark Kessel has served as a director since August 2016.

16. Defendant Richard Maroun has served as a director since August 2016.

17. Defendant David Shapiro has served as a director since December 2018.

18. Defendant Carolyn Beaver has served as a director since February 2019.

19. Defendants listed in ¶¶ 13 to 18, who comprise the Board, are collectively referred to herein as the "Individual Defendants."

20. By virtue of their positions as directors and/or officers of the Company with the ability to exercise control over its business and corporate affairs, each Individual Defendant owes the Company and its stockholders fiduciary obligations of loyalty, good faith, and due care. The Individual Defendants are required to act in furtherance of the best interests of the Company and its stockholders.

## SUBSTANTIVE ALLEGATIONS

21. On July 26, 2019, the Company filed the Proxy with the SEC in connection with the Company's Annual Meeting. Per the Proxy, as of the Annual Meeting's record date, July 8, 2019, (the "Record Date"), the Company had a total of 130,279,463 shares of common stock outstanding and entitled to be voted at the Annual Meeting.

22. In the Proxy, the Company and Board sought stockholder approval of the Reverse Split Proposal (proposal number five in the Proxy), which would authorize the Board, in its discretion but in no event later than the date of the 2020 annual meeting of stockholders, to amend the Certificate to implement a reverse stock split of its capital stock, at a ratio within the range of 1-for-5 to 1-for-20. In the Proxy, the Board recommended that stockholders approve the Reverse Split Proposal.

23. As disclosed in the Proxy, in order for the Reverse Split Proposal to be approved, a majority of all stockholders (not just a majority of the votes cast) had to vote "Yes." In other words, in order for the Reverse Split Proposal to be approved, 65,139,732 shares had to vote in favor of it.

24. Specifically, the Company and Board told stockholders that:

*Vote Required*

The **affirmative vote of the holders of a majority of the outstanding shares of our common stock** entitled to vote at the 2019 Annual Meeting is required for the approval of [the Reverse Split Proposal]. Abstentions and broker non-votes will be counted as present for purposes of determining the presence of a quorum. **Abstentions and broker non-votes**, however, will not be considered as votes cast for or against this proposal, and as a result, abstentions and broker non-votes will have the same effect as a vote against this proposal.

(Emphasis added).

25. In the Proxy, the Company and Board also disclosed that the Reverse Split Proposal was considered a non-routine proposal and that abstentions and broker non-votes would have the same effect as a vote against the proposal.

26. A broker non-vote occurs in connection with shares held by a stockholder in "street name," i.e., the stockholder's stock is held by the Broker, with such Broker being the stock's record holder.

27. To vote shares held in street name, a stockholder can instruct the Broker how to vote. However, under the New York Stock Exchange rules, if a stockholder does not give voting instructions to the Broker, the Broker has the authority to vote the shares using their discretion on "routine" proposals but not on "non-routine" proposals.

28. As represented in the Proxy, the Reverse Split Proposal was a "non-routine" proposal, and the Brokers did not have discretionary authority to vote stockholders' shares. Specifically, the Proxy stated:

5

>Broker non-votes are shares held by brokers, banks or other nominees who are present in person or represented by proxy, but which are not voted on a particular matter because the brokers, banks or nominees do not have discretionary authority with respect to that proposal and they have not received voting instructions from the beneficial owner. Under the rules that govern brokers, brokers have the discretion to vote on routine matters, but not on non-routine matters. The only routine matters to be considered at the Annual Meeting are the ratification of the appointment of the Company's independent registered public accountants. The remaining proposals are considered to be non-routine matters. *As a result, if you do not provide your brokers or nominees with voting instructions on these non-routine matters, your shares will not be voted on these proposals.*

29. Commonly a broker non-vote will not be counted and will have no impact on a vote.  However, where a proposal must be affirmatively approved by a majority of all stockholders, such as the Reverse Split Proposal, broker non-votes are treated as "Against" votes.

30. In addition to seeking stockholder approval of the Reverse Split Proposal, the Company and Board also sought stockholder approval of other "non-routine" proposals (the "Additional Non-Routine Proposals"), namely, to: (1) re-elect directors; (2) approve, on a non-binding advisory basis, the compensation of the Company's executives (the "Say-on-Pay Proposal"); and (3) determine, on an advisory basis, the frequency with which the stockholders of the Company shall have an advisory vote on executive compensation (the "Say-on-Pay Frequency Proposal").

31. In contrast with the Reverse Split Proposal, the Company disclosed that each of Additional Non-Routine Proposals required either a plurality vote or only the affirmative vote of a majority of the votes cast in order for the respective proposal to be approved.  As such, any broker non-votes cast in connection with these votes have no impact.

32. On September 5, 2019, the Company filed a Form 8-K (the "Form 8-K") with the SEC in which it announced the purported final results of the Annual Meeting.  A total of 98,580,175 shares were present and accounted for at the Annual Meeting.

| Proposal | Votes Cast | | | |
|---|---|---|---|---|
| | For | Withheld | Broker Non-Votes | Total |
| Re-election of Taylor Crouch | 40,194,745 | 2,672,569 | 55,712,861 | 98,580,175 |
| Re-election of Mark Kessel | 40,199,856 | 2,667,458 | 55,712,861 | 98,580,175 |

| Proposal | Votes Cast | | | | |
|---|---|---|---|---|---|
| | For | Against | Abstain | Broker Non-Votes | Total |
| **The Reverse Split Proposal** | **84,455,125** | **12,025,380** | **2,099,670** | **0** | **98,580,175** |
| The Ratification of Accountant Proposal | 95,572,780 | 1,801,000 | 1,206,394 | 0 | 98,580,174 |
| The Say-on-Pay Proposal | 27,665,468 | 14,781,993 | 419,853 | 55,712,861 | 98,580,175 |

| Proposal | Votes Cast | | | | | |
|---|---|---|---|---|---|---|
| | One Year | Two Years | Three Years | Abstain | Broker Non-Votes | Total |
| **The Say-on-Pay Frequency Proposal** | 40,549,283 | 313,766 | 1,759,240 | 0 | 55,712,861 | 98,580,175 |

33.     As demonstrated above, the purported number of affirmative votes and the complete lack of broker non-votes with respect to the Reverse Split Proposal stand in stark

7

contrast with the votes cast with respect to the Additional Non-Routine Proposals at the Annual Meeting, each of which received exactly 55,712,861 broker non-votes.

34. The reported voting results for the Reverse Split Proposal are simply not possible if the Company and Board tallied the votes as they represented to stockholders they would. It is inconceivable that the beneficial owners of exactly 55,712,861 shares of common stock instructed their Broker to vote their shares "For" the Reverse Split Proposal while simultaneously failing to provide similar instructions – or, indeed, providing any instruction at all – with respect to the Additional Non-Routine Proposals.

35. As such, the Company and Board misrepresented to stockholders how the votes cast with respect to the Reverse Split Proposal would be counted.

36. Stockholders have the right to cast fully informed votes based on truthful proxy solicitations from their fiduciaries. How a vote is to be counted is the most fundamental information that a reasonable Organovo stockholder would have found important in determining whether to approve the Reverse Split Proposal. As represented in the Proxy, a stockholder's non-vote should have had an "Against" impact on the vote on the Reverse Split Proposal. However, in truth, the Company treated a stockholder's non-vote as an affirmative vote that served to pass the Reverse Split Proposal.

37. According to the Proxy, as of the Record Date, the Company had a total of 130,279,463 shares of common stock outstanding and entitled to be voted at the Annual Meeting. As discussed above, in order for the Reverse Split Proposal to be approved, a majority of outstanding shares—i.e., 65,139,732 shares—had to vote in favor of it.

38. Had the vote concerning the Reverse Split Proposal been tabulated as represented in the 2019 Proxy, the Reverse Split Proposal would not have been (purportedly) approved. If

the broker non-votes were properly counted as "Broker Non-Votes", the Reverse Split Proposal would only have received approximately 28.7 million "For" votes.

39. Relying on the improper stockholder vote, the Company and Board represented in the Form 8-K that the stockholders had approved the Reverse Stock Split. On the basis of this improperly obtained stockholder "approval", the Company and Board now have the purported authority to effect a reverse stock split of the Company's common stock.

## CLASS ACTION ALLEGATIONS

40. Pursuant to Federal Rule of Civil Procedure 23, Plaintiff brings this action on his own behalf and as a class action on behalf of those who held Organovo stock as of the close of business on July 8, 2019, which was the record date for stockholders entitled to vote at the Annual Meeting (the "Class"). Defendants are excluded from the Class, as are Defendants' affiliates, immediate families, legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

41. This action is properly maintainable as a class action because:

42. The Class is so numerous that joinder of all members is impracticable. According to the 2019 Proxy, there were 130,279,463 shares of Organovo stock issued and outstanding as of the Record Date. The actual number of public stockholders of Organovo can be ascertained through discovery, but Plaintiff believes there are thousands of beneficial holders of the Company's stock geographically dispersed throughout the United States;

43. There are questions of law and fact which are common to the Class, including, *inter alia*, the following:

    a. whether the Proxy contained materially false and misleading statements, or omitted information necessary to render them not misleading; and

      b. whether Plaintiff and the other members of the Class have been or will be harmed by the wrongs complained of herein.

44. Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

45. Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

46. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for defendants or adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests;

47. The Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

48. Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49. Plaintiff was an owner of Organovo stock as of the Record Date described in the 2019 Proxy for purposes of voting on the Reverse Split Proposal at the Annual Meeting and has continued to hold Organovo stock since such time.

## COUNT I
## Against All Defendants for
## Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

50. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

51. Defendants issued, caused to be issued, and participated in the issuance of materially false and misleading written statements to stockholders which were contained in the Proxy. The Proxy contained the Reverse Split Proposal. The Proxy, however, misrepresented and failed to disclose how the vote would be counted. In the Proxy, Defendants falsely represented that broker non-votes would count as "No" votes with respect to the Reverse Split Proposal. In truth, however, broker non-votes did not count as "No" votes and brokers had discretion to vote the shares they held on behalf of another as they wished.

52. By reasons of the conduct alleged herein, the Defendants, which includes the Company and the directors that caused or allowed the issuance of the Proxy, violated section 14(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, the Company misled and/or deceived its stockholders by falsely portraying how the votes concerning the Reverse Split Proposal would be counted.

53. This information would have been material to the Company's stockholders in determining how to vote with respect to the Reverse Split Proposal.

54. Plaintiff thereby seeks relief for damages inflicted in connection with the improper approval of the Reverse Split Proposal based upon the misleading and incomplete Proxy. Plaintiff also seeks to void the Reverse Split Proposal.

## COUNT II

### (Breach of Fiduciary Duty against the Individual Defendants)

55. Plaintiff repeats each and every allegation contained above as though fully set forth herein.

56. As officers and/or directors of the Company, each of the Individual Defendants owed the Company and its stockholders fiduciary duties, including the duties of loyalty and care.

57. The Individual Defendants have an obligation to disclose all material information concerning the Reverse Split Proposal in a non-misleading manner.

58. The Individual Defendants have caused materially misleading and incomplete information to be disseminated to the Company's stockholders. The Proxy contained the Reverse Split Proposal. The Proxy, however, misrepresented and failed to disclose how the vote would be counted. In the Proxy, Defendants falsely represented that broker non-votes would count as "No" votes with respect to the Reverse Split Proposal. In truth, however, the Individual Defendants treated the Reverse Split Proposal as a routine vote, allowed Brokers to vote, and counted their votes as "Yes" votes.

59. This information would have been material to Organova's stockholders in determining how to vote with respect to the Reverse Split Proposal.

60. Because of the Individual Defendants' failure to provide full and fair disclosure, Plaintiff and the Class were stripped of their ability to make an informed decision on whether to approve the Reverse Split Proposal, and thus were irreparably harmed thereby.

61. Plaintiff thereby seeks relief for damages inflicted upon the stockholders in connection with the improper approval of the Reverse Split Proposal based upon the misleading and incomplete Proxy.

62. Plaintiff and the Class have no adequate remedy at law.

## COUNT III
### (Against the Individual Defendants for Breach of Fiduciary Duty)
### (In the Alternative)

63. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

64. Plaintiff pleads Count III in the alternative and to the extent that the Individual Defendants contend that the Proxy was not false and misleading because the Reverse Split Proposal was a non-routine vote.

65. As officers and/or directors of the Company, each of the Individual Defendants owed the Company and its stockholders fiduciary duties, including the duties of loyalty and care.

66. The Individual Defendants have an obligation to properly count stockholder votes.

67. The Individual Defendants improperly counted broker non-votes as "Yes" votes with respect to the Reverse Split Proposal rather than as "No" votes as the Individual Defendants should have.

68. Plaintiff thereby seeks relief for damages inflicted upon the stockholders in connection with the improper approval of the Reverse Split Proposal based upon the misleading and incomplete Proxy.

69. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

A. Declaring this action to be a class action and certifying Plaintiff as the Class representative and his counsel as Class counsel;

B. A declaration that the Proxy was materially false and misleading;

C. A declaration that the Amendment was not approved by the stockholders;

D. Enjoining the Board and Company from adopting the Amendment to the Certificate that purportedly was adopted on the basis of the false and misleading Proxy;

E. In the alternative, a declaration that the Individual Defendants improperly counted the votes with respect to the Reverse Split Proposal;

F. Against all Defendants and in favor of the Class for the amount of damages sustained by the Class as a result of Defendants' wrongdoing, plus pre-judgment and post-judgment interest;

G. Equitable and/or injunctive relief as necessary or permitted by law and equity;

H. Awarding Plaintiff the costs and disbursements of this action, including reasonable allowance of fees and costs for Plaintiff's attorneys, experts, and accountants; and

I. Granting Plaintiff such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: October 10, 2019

OF COUNSEL:

LEVI & KORSINSKY, LLP
William J. Fields
Samir Shukurov
55 Broadway, 10th Floor
New York, New York 10006
(212) 363-7500
(212) 363-7171

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
(302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff*